HARRY E. KIRK and MARGUERITE KIRK, his wife, E. R. KIRK, and EVELYN KIRK, his wife, HENRY KIRK and ALVA KIRK, his wife, ROY KIRK and SARAH KIRK, his wife, LILLIAN V. LEE and KARL LEE, her husband, v. C. E. KIRK.

36 So. (2nd) 171
June 29, 1948
Rehearing denied July 20, 1948

June Term, 1948
En Banc

*Edgar C. Thompson, Edward G. Newell* and *Harry T. Newett,* for appellants.

*C. D. Blackwell* and *E. B. Donnell,* for appellee.

PER CURIAM:

Affirmed.

THOMAS, C. J., TERRELL, CHAPMAN and SEBRING, JJ., concur.

ADAMS and BARNS, JJ., dissent.

ADAMS, J. dissenting:

I think the decree should be reversed on authority of Rappaport v. Kalstein, 24 So. (2nd) 301.

BARNS, J., dissenting:

The appellee, Kirk, is the father of the appellants. The mother died in February, 1945, and this bill, brought by the appellee-father, was filed in August, 1946. The suit was brought to eliminate, by judicial decree, all of the right, title and interest in and any claim of the children to the property. The special master's findings were for the defendant children, but the chancellor sustained exceptions by entering a final decree for the plaintiff father.

The land in question was acquired by the father and mother, in 1914, as an estate in entirety. They thereafter lived on it, raising a large family, and the wife died in 1945. Plaintiff-appellee-father still lives there as his home. The mother and father conveyed title to the property to the son, Harry E. Kirk, on November 15, 1927, but when Harry was about to marry, in 1930, he conveyed the property to his sister, Lillian V. Kirk, who is now Lillian V. Kirk Lee. The coercive influence which caused the original conveyance to Harry Kirk was an assumed improvident outstanding 1925 boom-time obligation of the plaintiff-appellee-father.

There was no attempt to show in detail where the money came from for the original purchase of the property or the detailed contributions of the parties to its maintenance, and there has been no attempt to detail the application of the rental proceeds.

The record fails to disclose the ages of the parties, but the children seem to be over fifty years of age.

It appears that during the mother's life she, with the aid of the daughter, Lillian, either managed the fiscal affairs of the family or contributed much aid to the father in that respect. The maintenance of the property was contributed to by members of the family other than the father.

The record fails to show any attempt on the part of the children to interfere with the possession of the father. Lillian, who holds the legal title, says that she considers that she holds it for the interest of the other children and herself; that it ought to be that way.

When it is considered that the father seems to have about all the interest in the property that he can actually use and enjoy, i. e., his possession; that she has been looking after the property since before the mother died and before and since she married (when she was past 40); that there is evidence that the father could not look after the property and that the mother, who contributed greatly to the management and maintenance of the property, was a party to placing the title to the property in Harry, for the purposes for which Lillian says she now holds it; and, since the conveyance of which plaintiff complains occurred more than nineteen years ago and it was not attacked until the wife, who was a party thereto, died, and, since neither Lillian nor Harry (nor any of the children) now seek to deprive the father of use or usufruct of the property, it seems that the father still has all he has had for nineteen years, and there seems to be no basis or circumstance in equity to compel the Court to work a change of the existing state of affairs unless it be for the purpose of maintaining the status quo. The contributions have been rendered under circumstances as they have existed for nineteen years; they were rendered under circumstances not calling for a debit and credit attitude, as would more likely have been the case had it been reasonably contemplated that the basis was to be changed.

The decree appealed should be reversed, with leave to the chancellor to further the equities not inconsistent herewith and also to consider retaining jurisdiction to manage the matter as in the nature of a trust.